IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PRINCIPAL LIFE INSURANCE CO.,                 00-CV-1345-BR
an Iowa corporation; PETULA
ASSOCIATES LTD., an Iowa                      OPINION AND ORDER
corporation; and EQUITY FC LTD.,
an Iowa corporation,

       Plaintiffs,

v.

CONSTANCE A. ROBINSON; CHESTER L.
ROBINSON, individually and as trustee
of the CHESTER ROBINSON TRUST; LYNN
ROBINSON; KAY BELL; THEA WOOD; and
DEE HANSON,

       Defendants.


**J. STEPHEN WERTS**
**G. FRANK HAMMOND**
Cable Huston Benedict Haagensen & Lloyd LLP
1001 S.W. Fifth Avenue, Suite 2000
Portland, OR  97204
(503) 224-3092

       Attorneys for Plaintiffs


1 - OPINION AND ORDER

**JULIE R. VACURA**
**WILLIAM L. LARKINS**
Larkins Vacura, LLP
808 S.W. Third Avenue, Suite 540
Portland, OR  97204
(503) 222-4424

      Attorneys for Defendants


**BROWN, Judge.**

      This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (#127) and Defendants' Renewed Motion for Leave to File Amended Answer (#131).

      For the reasons that follow, the Court **GRANTS** both Motions.


## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### Facts

      On or about May 19, 1978, William Robinson, Constance Robinson, Chester Robinson, and Evelyn Robinson (Original Lessors) entered into a written ground Lease with MTR Company regarding certain unimproved real property in Washington County, Oregon.  William Robinson and Evelyn Robinson are now deceased. Chester Robinson, who is named as a Defendant in this matter individually and as trustee for the Chester Robinson Trust, conveyed his interest in the Lease to the Chester Robinson Trust and to the remaining Defendants.

      In 1979, MTR Company assigned its interest in the Lease to Koll/Intereal Northwest(KINW).  KINW later assigned the Lease to

2 - OPINION AND ORDER

Koll/Intereal Portland (KIP).  In 1985, the Original Lessors
entered into a First Lease Amendment with KIP that provided for
increased rent and an option to purchase the property.  On
April 1, 1986, the Original Lessors entered into a Second Lease
Amendment with KIP that allowed KIP to divide the leased property
into parcels and to assign the parcels to others.  The Second
Lease Amendment also adjusted the rental calculations provided in
Section 2.1 of the Lease to reflect various conveyances and a
sublease.  KIP then divided the leased property into two parcels,
and Plaintiffs, three Iowa corporations, are successors-in-
interest lessees of one of the parcels.

The initial term of the Lease is 99 years with an option to
renew for two additional 25-year terms.  Section 2.1 of the Lease
provides a formula for adjusting the rental payments in the 31st
year of the Lease and again in the 61st year.  Section 2.1
provides as follows:

2.1  <u>Amount of Rent</u>

Lessee shall pay to Lessor rent in an amount equal
to 44.6 acres multiplied by $22,000 per acre and
multiplied by the applicable percentages determined in
accordance with the following provisions of the Earnest
Money Receipt and Lease Option Agreement dated
September 13, 1977.

The annual yearly rental during the primary term
of ninety-nine (99) years is to be payable in equal
monthly installments on the first day of each and every
month for said term of the Lease and is to be an amount
equivalent to the percent of the aggregate cost of
Twenty-two Thousand Dollars ($22,000) per acre, which
percentage is set out below:

3 - OPINION AND ORDER

| DURING LEASE YEAR | Percentage of Total Initial Gross Acreage Cost Based on $22,000 Per Acre | Which is Rent of |
|---|---|---|
| 1 | 6% | $4,890.60 |
| 2 | 6% | $4,890.60 |
| 3 | 8% | $6,520.80 |
| 4 | 8% | $6,520.80 |
| 15 - 30 | 10% | $8,151.00 |
| 31 - 60 | To be Determined | To be Determined |
| 61 - 99 | As Set Forth Below | As Set Forth Below |

At the commencement of the 31st year of the term of the Lease, the percentage to be used for determining the rent, as computed above, for the 31st through 60th years of the Lease term, shall be re-evaluated; and, again, at the commencement of the 61st year of the Lease term, the percentage to be used for determining the rent, as computed above, for the 61st through 99th years of the Lease term, shall be re-evaluated. Upon each re-evaluation of the percentage, the percentage to be used shall be the ratio between the rental charged and the then fair market value of properties which are comparable to the leased Premises, exclusive of any value or rent attributed to improvements on the property. The percentage to be used shall be determined by an MAI appraisor [*sic*] selected in accordance with the method of choosing an appraisor [*sic*] for purposes of the purchase option price according to Section 2.1.2.

The Second Lease Amendment decreased the total acreage of the leased premises from 44.46 acres to 29.49 Net Usable Acres and increased the value per acre from $22,000 per acre to $30,517.72 per Net Usable Acre. The Second Lease Amendment also

4 - OPINION AND ORDER

included a provision acknowledging that the parties disagreed about the proper calculation of the rent adjustment in the 31st and 61st years of the Lease term as set forth in Section 2.1 of the Lease and expressly preserving each party's right to assert its interpretation of Section 2.1 in the future.

### Standards

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

The substantive law governing a claim or a defense

5 - OPINION AND ORDER

determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

When deciding a matter of state law, this Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.*

## Discussion

Plaintiffs move for summary judgment and seek a declaration affirming their interpretation of Section 2.1 of the Lease.

### A.    The Contract Dispute

As noted, the disputed section allows for the recalculation of the rental amount in the 31st and 61st years of the 99-year Lease. Plaintiffs contend the language is unambiguous and mandates the following formula for calculation of rent:

(number of acres) x (value per acre) x (applicable percentage) = yearly rate

6 – OPINION AND ORDER

Under Section 2.1, the "applicable percentage" starts out at 6% and goes up to 10% for years 5-30.  Plaintiffs contend only the applicable percentage is to be recalculated in the 31st and 61st years, and the base value per acre is to remain constant throughout the term of the Lease.  On the other hand, Defendants contend both the base property value of the land and the ratio for recalculating the rental amount are to be re-evaluated at those times.

   **B.    Three-Step Analysis Under Oregon Law**

Under Oregon law, the construction of a contract is a question of law for the court.  To interpret disputed contract language, the court follows three steps.  First the court examines the text of the disputed provisions in the context of the contract as a whole.  If the provision is clear, the analysis ends.  *Yogman v. Parrott,* 325 Or. 358, 361 (1997).  *See also Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 180 Or. App. 461, 467 (2002).

> When considering a written contractual provision, the court's first inquiry is what the words of the contract say * * *.  To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined.  In making that determination, the court inquires whether the provision at issue is ambiguous.  Whether terms of a contract are ambiguous is a question of law.  In the absence of an ambiguity, the court construes the words of a

contract as a matter of law.

*Yogman,* 325 Or. at 361 (internal quotations and citations omitted).

A contract term is ambiguous if it is susceptible to at least two plausible interpretations when examined in the context of the contract as a whole. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Ore.*, 313 Or. 464, 470 (1992). If the court determines the disputed provision is ambiguous, it proceeds to the second step of the analysis: examination of extrinsic evidence to determine the contracting parties' intent. *Yogman*, 325 Or. at 363. If examination of extrinsic evidence does not resolve the ambiguity, the court proceeds to the third step, which is reliance on appropriate maxims of construction. *Id.* at 364.

Defendants argue Oregon law allows the Court to consider extrinsic evidence when determining at the first step of the analysis whether a contract provision is ambiguous. Plaintiffs, however, argue extrinsic evidence is to be considered only at step two and only if the Court determines the contract is ambiguous. Oregon law is somewhat confusing on this issue because there is authority to support both positions.

In *Abercrombie v. Hayden Corp.*, the Oregon Supreme Court held a trial court may consider extrinsic evidence to determine whether the terms of an agreement are ambiguous. 320 Or. 279,

292 (1994).  In *Yogman*, decided three years after *Abercrombie*,
the Oregon Supreme Court instructed that extrinsic evidence
should be considered only if the text of an agreement is
ambiguous viewed in context of the entire agreement.  *Yogman*, 325
Or. at 361-64.  The *Yogman* court, however, did not expressly
overrule *Abercrombie,* and the Oregon Court of Appeals has
continued to follow *Abercrombie*.  *See, e.g., Portland Fire
Fighters' Ass'n Local 43 v. City of Portland*, 181 Or. App. 85, 94
n.6 (2002).

        In *Abercrombie*, the court relied on Or. Rev. Stat. § 42.220,
which provides:  "In construing an instrument, the circumstances
under which it was made, including the situation of the subject
and of the parties, may be shown so that the judge is placed in
the position of those whose language the judge is interpreting."
The *Abercrombie* court's reliance on Or. Rev. Stat. § 42.220
indicates the extrinsic evidence that the trial court may
consider is limited to evidence that relates to the circumstances
under which the contract was made.  *See City of Eugene v. Manaco*,
171 Or. App. 681, 687-88 (2000).  Regardless of any such
evidence, however, the Court must enforce the contract as written
if the language of the contract is clear.  *See Taylor's Coffee
Shop, Inc. v. Taylor*, 56 Or. App. 419, 422 (1982).

        In light of the confusion in Oregon law about the
admissibility of extrinsic evidence at step one of the

9 - OPINION AND ORDER

interpretation process, the Court considers Defendants' arguments concerning extrinsic evidence they deem pertinent to the interpretation of Section 2.1.

**C.    Interpretation of Section 2.1**

As noted, Plaintiffs argue the single reasonable interpretation of Section 2.1 is that only the percentage used to determine rent is to be re-evaluated in the 31st and 61st years of the Lease term, and none of the other components of the rental calculation are subject to re-evaluation.  Plaintiffs are correct that the language of Section 2.1 does not describe a re-evaluation of any component other than the "percentage."  Under Section 2.1, the rent to be charged is "an amount equivalent to the percent of the aggregate cost of Twenty-Two Thousand Dollars ($22,000) per acre, which percentage is set out" in a chart on page three of the Lease.

Following the chart, Section 2.1 provides:  "At the commencement of the 31st year of the term of the Lease, the percentage to be used for determining the rent . . . shall be re-evaluated; and again, at the commencement of the 61st year of the Lease term, the percentage to be used for determining the rent . . . shall be re-evaluated."  In addition, Section 2.1 provides: "Upon each re-evaluation of the percentage, the percentage to be used shall be the ratio between the rental charged and the then fair market value of properties which are comparable to the

10 - OPINION AND ORDER

leased Premises . . . ."  Section 2.1 also provides "[t]he percentage to be used shall be determined by" an appraiser.

Notably, Section 2.1 does not provide for an adjustment or re-evaluation of the cost per acre nor is there any mention of "fair market value rent."  Section 2.1 also does not contain any language from which the Court can infer a requirement to re-evaluate or to adjust the fair market value of the leased property.

Defendants nonetheless argue summary judgment is inappropriate for three reasons: 1) the language of Section 2.1 is ambiguous because the word "initial" in the column titled "Percentage of Total Initial Gross Acreage Cost Based on $22,000 Per Acre" suggests the cost of $22,000 per acre is only an "initial" rate to be reassessed in the 31st and 61st year of the Lease and because it is inconsistent with language in Section 17, which provides an option to purchase the property in the 31st and 61st years of the lease at fair market value; 2) extrinsic evidence establishes the parties also intended Section 2.1 to require adjustment of the value of the acreage; and 3) Plaintiffs have "admitted" Section 2.1 is ambiguous.

### 1.  Ambiguity

Defendants' assertion about the ambiguity of the column heading is unpersuasive.  Rather than implying the cost per acre will change or will be re-evaluated, the heading language merely

11 - OPINION AND ORDER

indicates the rent is to be calculated as a "percentage of total
initial gross acreage cost." In other words, the use of the word
"initial" in this context does not suggest the value of the
leased premises will change over time nor is there any language
in Section 2.1 to indicate a requirement to reassess the value of
the land when computing the rent amount.

Defendants also contend Section 2.1 is ambiguous
because it may be interpreted to require a re-evaluation of the
value of the property because Section 17 provides an option to
purchase the property at fair market value in the 31st and 61st
years of the Lease. Defendants argue it would not make any sense
to provide an option to purchase the property for fair market
value and, at the same time, to provide the option to continue
renting the property at a rate significantly less than fair
market rent. Plaintiffs' construction of Section 2.1, however,
is not inconsistent with Section 17.

When examining the text of a contract, the court must
read the contract as a whole and give effect to all provisions if
possible. *Koch v. Spann*, 193 Or. App. 608, 613 (2004). The
court "cannot ignore provisions that are expressly included in
the agreement; if a construction is inconsistent with any of
those express terms, it is not reasonable." *Id.* The specific
reference to fair market value in Section 17, in fact, indicates
the parties knew how to specify a fair market value adjustment

12 - OPINION AND ORDER

when one was intended.  Section 17.3 provides "the appraiser,
after selection, shall determine the then fair market value of
the Leased Premises exclusive of any value attributable to
Improvements placed on the Leased Premises or this Lease.  The
purchase price shall be the value as determined by the appraisor
[*sic*]."  In contrast, Section 2.1 does not contain any reference
to determining the fair market value of the Leased Premises.  The
fact that the Lease provides an option to purchase the Leased
Premises at fair market value or to continue the Lease under the
terms of Section 2.1 is not, therefore, inherently inconsistent.

**2.    Extrinsic Evidence**

As noted, Defendants request the Court to consider
extrinsic evidence to support their contentions that Section 2.1
is ambiguous and that the Original Lessors, specifically Bill
Robinson, intended the fair market value of the land to be re-
evaluated in the 31st and 61st years of the Lease term.  In
particular, Defendants rely on the testimony of Mike Robinson,
Bill Robinson's son; the testimony of Mike Brandt; earlier drafts
of the Lease; and some of Bill Robinson's handwritten notes.

The record establishes the Lease was negotiated on
behalf of the Original Lessors by Bill Robinson and by Terry
Brandt on behalf of MTR.  Bill Robinson is deceased.  Although
Terry Brandt testified he "has virtually no recollection" of the
Lease negotiations nor about the drafting of the Lease terms, he

13 - OPINION AND ORDER

also stated he had a "general recollection" that Section 2.1 was
an attempt to provide a periodic bump to fair market value
rentals.  As already noted, Section 2.1 does not contain any
language from which the Court can construe an intent to adjust
the value of the acreage in the 31st and 61st years of the Lease.

In addition, the earlier drafts of the Lease and some
of Bill Robinson's handwritten notes are not admissible to
contradict the terms of the Lease because the Lease is fully
integrated.  *See Howell v. Oregonian Publ'g Co.*, 82 Or. App. 241,
245 (1986)("Any contract term reduced to writing supersedes all
prior and contemporaneous negotiations and oral understandings as
to that term.").

In any event, although Defendants argue their extrinsic
evidence of the parties' intentions at the time they executed the
Lease creates an ambiguity, "[e]vidence of the circumstances
under which an agreement is made that is indicative of the
parties' intent may only affect the interpretation of the
agreement when there is language in the agreement that is
susceptible to being construed to carry out that intent."
*Criterion Interests, Inc. v. The Deschutes Club*, 136 Or. App.
239, 246 (1995).

In sort, Defendants' extrinsic evidence does not
demonstrate any ambiguity in Section 2.1.

14 - OPINION AND ORDER

### 3.    Plaintiffs' "Admissions"

Finally, Defendants contend various representatives of Plaintiffs have "admitted" that Section 2.1 is confusing, difficult to understand, and/or ambiguous.  Defendants argue these statements are binding on Plaintiffs as admissions and, therefore, preclude summary judgment in Plaintiffs' favor.  As noted, however, whether a contract term is ambiguous is a question of law for the court.  Even if Plaintiffs had acknowledged Section 2.1 is ambiguous (and the record does not establish that conclusion), such an admission is not binding on the Court.

In summary, the Court concludes Section 2.1 of the Lease, viewed in the context of the Lease as a whole, is unambiguous and provides for re-evaluation of the percentage to be used to calculate the rent in the 31st and 61st year of the Lease and does not require the re-evaluation of any other component of the rental calculation.  Accordingly, Plaintiffs are entitled to summary judgment.

## <u>DEFENDANTS' RENEWED MOTION FOR LEAVE TO FILE AMENDED ANSWER</u>

### <u>Standards</u>

Federal Rule of Civil Procedure 13(e) provides:

> A claim which either matured or was acquired
> by the pleader after serving a pleading may,
> with the permission of the court, be

15 - OPINION AND ORDER

presented as a counterclaim by supplemental
pleading.

Leave to amend "shall be freely given when justice so
requires." Fed. R. Civ. P. 15(a). "This policy is to be applied
with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1051 (9th Cir. 2003).

"Five factors are taken into account to assess the propriety
of a motion for leave to amend: bad faith, undue delay, prejudice
to the opposing party, futility of amendment, and whether the
plaintiff has previously amended the complaint." *Johnson v.
Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Absent prejudice
or a strong showing of any of the remaining . . . factors, there
exists a presumption under Rule 15(a) in favor of granting leave
to amend." *Eminence Capital*, 316 F.3d at 1052. These principles
apply whether the party seeking leave to amend is the plaintiff
or the defendant. *See, e.g., Komie v. Buehler Corp.*, 449 F.2d
644 (9th Cir. 1971); *United States v. Webb, supra*.

## Discussion

Defendants seek leave to amend their Answer to include a
counterclaim for reformation of the Lease. In response,
Plaintiffs contend they will be prejudiced if amendment is
allowed and, in any event, the proposed amendment is futile.

Plaintiffs argue they will be prejudiced if Defendants are
allowed to add their counterclaim because additional discovery
will be required. Defendants, however, contend little, if any,

16 - OPINION AND ORDER

additional discovery will be required to address the
counterclaim.

As noted, whether an amendment will cause undue prejudice to
the opposing party is the key factor the court must consider when
determining whether to grant a motion for leave to file an
amended pleading. *Eminence Capital,* 316 F.3d at 1052. The party
who opposes amendment bears the burden to show prejudice. *DCD*
*Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Defendants first sought leave to amend their Answer to add a
counterclaim for reformation in August 2002. The Court denied
that Motion as moot in light of its decision to grant Defendants'
Motion for Summary Judgment. In January 2005, however, the Ninth
Circuit reversed this Court's decision and remanded the case.

On August 5, 2005, Plaintiffs filed their Motion for Summary
Judgment and Defendants filed their Renewed Motion for Leave to
File Amended Answer. As noted, Plaintiffs have been aware of
Defendants' intent to add a reformation counterclaim since 2002.
Thus, Defendants' proposed counterclaim comes as no surprise to
Plaintiffs. In addition, the argument about the intent of the
original parties to the Lease has been intertwined with the
dispute about the interpretation of the contract and already has
been the subject of discovery. The need for additional discovery
to address the counterclaim in particular, if any is required, is
not sufficient, therefore, to constitute undue prejudice.

17 - OPINION AND ORDER

The Court, moreover, does not find any basis to conclude the proposed amendment is futile. A proposed amendment to a complaint "'is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim.'" *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)(quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). In addition, a party should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading would be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Miller*, 845 F.2d at 214. *See also DCD Programs*, 833 F.2d at 188.

Here Plaintiffs argue Defendants' proposed reformation counterclaim is futile because it is barred by laches. Plaintiffs contend the counterclaim accrued as of April 1, 1986, the date of the Second Lease Amendment in which the parties documented their dispute over the correct interpretation of Section 2.1. Plaintiffs argue Defendants' Motion should be barred because it was brought 19 years after Defendants learned of the dispute about the rental calculation.

Under Oregon law, laches will bar a party from asserting an equitable claim when the following three elements are present: 1) full knowledge of all the facts, 2) delay for an unreasonable time, and 3) substantial prejudice to the opposing party "to the

18 - OPINION AND ORDER

extent it would be inequitable to afford the relief sought against the party asserting laches as a defense." *Hilterbrand v. Carter*, 175 Or. App. 335, 342-43 (2001)(internal quotations and citations omitted). "Laches depends on the circumstances of each case and will not be applied mechanically to every situation merely because a party has acted with neglect." *Id.* at 343 (internal quotation and citation omitted). Laches does not begin to run when a party is put on record notice of a "potential challenge to their future interests." Instead laches begins to run from the date the party's interests are "actually repudiated or challenged." *Ass'n of Unit Owners v. Far West Fed. Bank*, 120 Or. App. 125, 131-32 (1993).

Here Defendants' future interests in the rental calculation to be applied in the 31st and 61st years of the Lease were not challenged until Plaintiffs filed this action and, therefore, Defendants' knowledge of the dispute about the proper interpretation of Section 2.1 did not trigger in 1986 a duty to bring their reformation claim. In addition, the Court concludes Defendants have not delayed the bringing of their counterclaim for an unreasonable time and Plaintiffs will not suffer substantial prejudice if the counterclaim is litigated on its merits. Accordingly, the Court finds laches does not bar Defendants' reformation counterclaim and, therefore, it is not futile.

19 - OPINION AND ORDER

For these reasons, the Court concludes Defendants should be allowed to amend their Answer to assert a counterclaim for reformation of the Lease.

## CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Summary Judgment (#127) and **GRANTS** Defendants' Renewed Motion for Leave to File Amended Answer (#131). Defendants shall file their Amended Answer no later than March 6, 2006, and the Court will set a status conference thereafter to set additional case management dates.

IT IS SO ORDERED.

DATED this _27th_ day of February, 2006.


__/s/ Anna J. Brown_____
ANNA J. BROWN
United States District Judge


20 - OPINION AND ORDER